UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        -v-

FRANCISCO ROSARIO,

                Defendant.

17-CR-27-LTS

### MEMORANDUM ORDER

The Court has received Defendant Francisco Rosario's motion for early termination of the supervised release portion of his sentence, pursuant to 18 U.S.C. section 3583(e)(1) and Federal Rule of Criminal Procedure 32.1(c)(2)(B). (Docket entry no. 96 (the "Motion").) The Probation Office does not oppose his Motion. The Court has also received the Government's opposition (docket entry no. 100 ("Gov. Opp."), and Mr. Rosario's reply (docket entry no. 101 ("Def. Reply")). The Court has considered carefully the parties' submissions and arguments and, for the following reasons, Mr. Rosario's Motion is denied.

### BACKGROUND

On April 27, 2017, Mr. Rosario pleaded guilty to committing wire fraud in violation of 18 U.S.C. section 1343. (Docket entry no. 34, Presentence Investigation Report ("PSR") ¶ 6.) As the Court explained at Mr. Rosario's sentencing:

> Mr. Rosario defrauded a married couple from the Dominican Republic of $788,000 while the husband was in the hospital recovering from major surgery. The victims spoke minimal English. They had no experience investing large sums of money. Indeed, they had only obtained such a significant sum of money in early 2015 because of terrible, terrible circumstances, a medical malpractice settlement due to a terrible family tragedy that had resulted [] in the need to take care of a vulnerable child. Mr. Rosario met the wife at an investment management course, where it appears she was trying to find good advice for taking care of this money. He took advantage of their inexperience. He convinced them to invest in

>what he claimed were interest-bearing Chinese railroad bonds, but instead they were collectible certificates that he had purchased from an art dealer, and he knew that these were just pieces of paper that someone might want to collect. He knew that their value was very low. He signed a document acknowledging that the $1900 he paid for some of them and the $3,000 that he paid for others of them were the value, the maximum value probably that they would have because they would only have value to someone who wanted to collect them as certificates, not as something to invest in. Then he turned around and sold these victims three of these certificates for $250,000 each. He told them they were worth $250,000 each. The certificates, he got for $1900 or $3,000. And he charged them a $38,000 commission on top of the fraudulent value price that he quoted to them, and he took their money. He led them through transferring this money into an account that he lied and said was an escrow account, and then he drained that account. He began spending and transferring large sums of that money into other accounts, including accounts in the name of family members of his, and he returned a very small portion of that money that he had stolen over time, saying it was interest payments on these fake bonds, in an attempt to convince the victims not to go to the police and to buy himself time to hide what he had done. The net result is that even though he has given back some of the money, as of today, $700,000 of that money remains missing.

(Docket entry no. 39 ("Sentc. Tr.") at 34-35.) On September 28, 2017, the Court sentenced Mr. Rosario to an above-Guidelines term of imprisonment of 72 months, followed by the statutory maximum three-year term of supervised release. (Docket entry no. 42 ("Judgment").)

In determining that the Sentencing Guidelines range of 51 to 63 months' imprisonment was "inadequate to address the statutory purposes of sentencing," the Court considered each of the factors embodied in 18 U.S.C. section 3553(a), including, among other things, the seriousness of the offense and the need for specific deterrence (noting that while this was Mr. Rosario's first offense, he committed the fraud in his early fifties and remained evasive about the whereabouts of the fraudulent proceeds), as well as several mitigating factors, such as his strong family ties, support network, and history of charitable work. (Sentc. Tr. 34-39.) The Court gave particular attention to the need to provide restitution to victims, observing that while this factor normally "weighs against the punitive and deterrent goals of an incarceratory sentence

to a certain degree," in this instance and on balance, that weight was undercut by Mr. Rosario "secret[ing] money" and not being "entirely forthcoming about what happened to the money or where it is."  (Id. at 38.)

Mr. Rosario commenced his supervision on January 13, 2022, and has approximately 14 months remaining in his three-year term.

## DISCUSSION

Pursuant to 18 U.S.C. section 3583, the Court may, after considering the factors set forth in section 3553(a) of Title 18 of the United States Code, "terminate a term of supervised release . . . after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  18 U.S.C.A. § 3583(e)(1) (Westlaw through P.L. 118-19).  The Guide to Judiciary Policy likewise recognizes that the Court may terminate "terms of supervised release . . . in felony cases after the expiration of one year of supervision, if the court is satisfied that such action is warranted by the conduct of the person under supervision and is in the interest of justice."  Guide to Judiciary Policy, Volume 8E, Chapter 3, § 360.20(a)(2).

Early termination is not, however, "warranted as a matter of course," and decisions regarding termination and modification are within the discretion of the district court.  United States v. Bastien, 111 F. Supp. 3d 315, 321 (E.D.N.Y. 2015) (citation omitted); accord United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997); see also United States v. Parisi, 821 F.3d 343, 347 (2d Cir. 2016) (citation omitted).  New or changed circumstances relating to the defendant, such as "exceptionally good behavior," are not necessarily required to terminate or modify the conditions of supervised release, but "[o]ccasionally . . . will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the

general punishment goals of section 3553(a)." Lussier, 104 F.3d at 36; Parisi, 821 F.3d at 347-48 (citations omitted) (interpreting the "plain language" of the decision in United States v. Lussier).

Mr. Rosario cites three principal considerations in support of his Motion: (1) his gainful employment for over two years as a patient relationship and lab liaison at Madison Dental Arts, where the office manager describes his work as "outstanding";[1] (2) the absence of any disciplinary issues while in BOP custody and of any violations while on supervised release; and (3) his consistent monthly restitution payments in compliance with the terms of his sentence. (Motion at 3-4.) Outside of work, Mr. Rosario volunteers with a non-profit organization called Fiadasec, which promotes environmental and social initiatives, and in connection with which he traveled (with permission from the Probation Office) to Colombia to present on his self-published, self-help book entitled Te Vendo el Cielo ("Heaven is for Sale"). (Id. at 2.)

Mr. Rosario argues that these facts "demonstrate[] that continued court supervision is unnecessary to achieve 'general punishment goals,' as well as the goals of promoting respect for the law, deterring criminal conduct by [him], and protecting the community from future harm by [him]." United States v. Noel, No. 18-CR-60-PKC, 2021 WL 4033769, at *2 (E.D.N.Y. Sept. 3, 2021). He further contends that, contrary to the Government's focus on the seriousness of his offense conduct (Gov. Opp. at 3), supervised release is not intended to be punitive, but instead intended to "fulfill[] rehabilitative ends, distinct from those served by incarceration." United States v. Burden, 860 F.3d. 45, 56 (2d Cir. 2017). Mr. Rosario

---

[1] Mr. Rosario began his employment during a period of home confinement. He served most of his custodial sentence at the minimum-security satellite camp at Federal Correctional Institution Fort Dix and was transitioned to home confinement during the COVID-19 pandemic before his eventual release from BOP custody on January 13, 2022. (Motion at 1.)

asserts that he "has been fully rehabilitated" and no longer requires supervision to facilitate his successful reentry into the community. (Def. Reply at 2.)

Having considered the factors set forth in both 18 U.S.C. section 3553(a), and the Guide to the Judiciary Policy, Volume 8E, Chapter 3, section 360.20, the Court concludes that early termination is not warranted at this time. While the Court commends Mr. Rosario for his infraction-free period of confinement in BOP custody, full compliance with the terms of his supervised release, and for engaging in volunteer work outside of his regular employment, this conduct ultimately aligns with what was expected of Mr. Rosario at the time of his sentencing. See, e.g., United States v. Gerritson, No. 01-CR-1081-JCF, 2004 WL 2754821, at *3 (S.D.N.Y. Dec. 1, 2004) (denying motion for early termination, made two years and three months into a five-year term, because avoiding criminal activity, maintaining employment, and attending counseling "conforms to the conditions of probation," "was anticipated at the time of sentencing," and "is not extraordinary"). In its careful balancing of the section 3553(a) factors at sentencing, the Court noted that Mr. Rosario has a tight-knit family, is well-educated, had conducted his own business, and had undertaken charitable work that positively impacted many people, all indicating he "clearly has the capability to conduct himself honorably at all times." (Sentc. Tr. at 36.) That Mr. Rosario is meeting that expectation—while worthy of praise and continued encouragement—does not now "render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)."[2] United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997). Nor does it allay the

---

[2] Mr. Rosario separately contends that he seeks a higher-paying full-time job, which would allow him to increase his pace of making restitution payments, and that his presently restricted travel within the Southern District of New York limits such opportunities. (Motion at 4.) The Motion presents insufficient information to enable the Court to assess the extent to which such restriction meaningfully hinders Mr. Rosario's ability to obtain a

Court's concerns regarding Mr. Rosario's lack of genuine remorse and the need to maintain the ability to provide some additional measure of protection of the public from possible future fraudulent activity by the Defendant.

The Court concludes that terminating Mr. Rosario's supervise release is neither warranted by his conduct nor "in the interest of justice," as the Court's prior analysis of the section 3553(a) factors continues to support the sentence—including the statutory maximum three-year term of supervised release—initially imposed by the Court.  18 U.S.C.A. § 3583(e)(1) (Westlaw through P.L. 118-19).

## Conclusion

Based on the foregoing, Mr. Rosario's motion for early termination of supervised release, pursuant to 18 U.S.C. section 3583(e)(1) and Federal Rule of Criminal Procedure 32.1(c)(2)(B), is denied.  This Memorandum Order resolves docket entry no. 96.

SO ORDERED.

Dated: New York, New York  
      November 6, 2023

   /s/ Laura Taylor Swain  
LAURA TAYLOR SWAIN  
Chief United States District Judge

---

higher-paying full-time job.  Moreover, as the Government points out, the Probation Office is already permitting Mr. Rosario to work outside of the Southern District of New York.  (Gov Opp. at 3.)